### DAVID DORMAN *v.* LAWRENCE F. DELPONTE, COMMISSIONER OF MOTOR VEHICLES

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE NO. 31541S
ANSONIA-MILFORD AT MILFORD

Memorandum filed September 21, 1990

*Stevens, Moran, Carveth & Carroll,* for the plaintiff.

*P. J. Green,* assistant attorney general, and *Clarine Nardi Riddle,* attorney general, for the defendant.

FULLER, J. This is an appeal from a decision of the commissioner of motor vehicles (commissioner) suspending the plaintiff's motor vehicle operator's license for six months for failure to take a chemical analysis test to determine if he was operating under the influence of alcohol. The date of the incident leading to the plaintiff's arrest was February 7, 1990, so the suspension was based upon the implied consent law, General Statutes § 14-227b, as amended by § 1 of Public Acts 1989, No. 89-314, effective January 1, 1990.

Subsection (a) of § 14-227b provides that any person operating a motor vehicle in this state is deemed to have given his consent to a chemical analysis of his blood, breath or urine. Subsection (c) of § 14-227b provides that if, after being arrested for driving under the influence of intoxicating liquor, a person refuses to submit to the test, a police officer may immediately revoke and take possession of his motor vehicle operator's license. After the police officer prepares a report, the commissioner shall suspend the operator's license for six months unless a hearing is requested. In those cases where a hearing is held, it is limited to the following four issues: (1) whether the police officer had probable cause to arrest the person for operating while under the influence of intoxicating liquor; (2) whether the person was placed under arrest; (3) whether the person refused to submit to the test or analysis; and (4) whether the person was operating the motor vehicle. General Statutes § 14-227b (f).

In the present case, it is undisputed that the plaintiff was operating a motor vehicle and that he was placed under arrest. Further, the plaintiff does not

claim that the police had no probable cause to arrest him for operating under the influence. The dispute centers on whether the plaintiff refused to submit to the test. A hearing was held on March 2, 1990, during which several documents were introduced as exhibits and testimony was given by the plaintiff. The arresting police officers did not appear to testify before the hearing officer. This limited record has been forwarded for this appeal. The only documents indicating the version of the police as to what occurred are the police report and the police narrative report. The narrative report states that the plaintiff was apprised of the consequences of the chemical alcohol test or his failure to take it and that "approximately six tests with the intoximeter were given by [the police officers] and each time [the plaintiff] would not blow hard enough causing the Intoximeter 3000 to low abort." The report also indicates that the plaintiff was given the opportunity to take a urine test "which he agreed to but when in the restroom, [the plaintiff] indicated he couldn't." The report also states that "based on the uncooperativeness of the [the plaintiff], he was advised that writer can only take this to mean a refusal for the test." It is not clear from the report who "writer" is. The police report indicates that the breath test was selected by the police officer.

Subsection (b) of § 14-227b provides that the person placed under arrest may be requested "to submit to a blood, breath or urine test at the option of the police officer," and that, after being informed of the effect of the test or refusal to take it, "if the person refuses or is unable to submit to a blood test, the police officer shall designate the breath or urine test as the test to be taken." Suspension of a license occurs "[i]f the person arrested refuses to submit to such test or analysis . . . ." General Statutes § 14-227b (c).

At the hearing the plaintiff testified that he attempted to take the test six times, that he was doing everything he possibly could do to get the machine to read accurately and that he attempted to perform the breath test to the best of his ability. There was also evidence at the hearing the the plaintiff had a heart condition and that heart surgery was scheduled a week later.

The limited evidence before the hearing officer establishes the uncontested fact that the plaintiff was offered the breath test six times and that each time, the intoximeter failed to register an adequate reading. Nothing in the record indicates that the intoximeter was working properly at the time. Even if the plaintiff's testimony at the hearing is disregarded, other evidence in the record shows that he did consent to take the test, and did so six times. The police officer preparing the narrative report was of the opinion that the plaintiff did not blow hard enough to cause the machine to register, but the report fails to indicate the degree of effort made by the plaintiff, whether he was intentionally holding back, or whether another person could have caused the machine to register a reading given the condition it was in at the time. The officer reached his own conclusion that the plaintiff was uncooperative and the officer construed this to be a refusal to take the test. This is not a factual conclusion that either the hearing officer or the court must accept. The police officer's opinion is speculation, as is the plaintiff's claim that his shortness of breath due to his heart condition was the reason that the machine did not register.

For purposes of this appeal, the court reviews the findings of fact and conclusions of law made by the hearing officer acting on behalf of the commissioner. The decision dated March 3, 1990, is on a standard printed form and does not contain any subordinate findings. It merely makes the findings and conclusions

required by the statute. This includes the factual conclusion that "the operator refused to submit to such tests or analysis." There are no findings that the plaintiff intentionally failed to perform the test properly or that the intoximeter was properly operating at the time.

This appeal is governed by General Statutes § 4-183 (j). Since the claim is that the plaintiff did not refuse to take the statutory test, the issue on review is whether the conclusion reached by the hearing officer is "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." General Statutes § 4-183 (j) (5). In an appeal under this statute, the court does not retry the case or substitute its judgment for that of the agency on the weight of the evidence or questions of fact. *Lieberman* v. *Board of Labor Relations,* 216 Conn. 253, 262, 579 A.2d 505 (1990); *Madow* v. *Muzio,* 176 Conn. 374, 376, 407 A.2d 997 (1978). The credibility of witnesses is within the province of the administrative agency, and under the substantial evidence rule, if there is evidence that reasonably supports the commissioner's decision, that decision must be upheld. *Persico* v. *Maher,* 191 Conn. 384, 409, 465 A.2d 308 (1983). The plaintiff has the burden of proving that the commissioner, acting on the evidence before him, acted contrary to law and in abuse of his discretion. *Demma* v. *Commissioner of Motor Vehicles,* 165 Conn. 15, 16–17, 327 A.2d 569 (1973). Where, as here, the claim is that the agency made an incorrect decision based on the evidence before it, the court applies the substantial evidence rule, which allows reversal of the decision only if the conclusion reached was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. *Persico* v. *Maher,* supra; *Lawrence* v. *Kozlowski,* 171 Conn. 705, 713, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977). The question on appeal is whether the commissioner has acted

unreasonably, arbitrarily, illegally, or in abuse of his discretion. *New Haven* v. *Freedom of Information Commission,* 205 Conn. 767, 773, 535 A.2d 1297 (1988); *Buckley* v. *Muzio,* 200 Conn. 1, 3, 509 A.2d 489 (1986); *Persico* v. *Maher,* supra.

The "substantial evidence rule is similar to the 'sufficiency of the evidence' standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords 'a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' " *Lawrence* v. *Kozlowski,* supra. While an agency's factual and discretionary determinations are to be accorded considerable weight by the courts; *Lieberman* v. *Board of Labor Relations,* supra, 262; in the present case, the finding made by the defendant that the plaintiff refused to submit to the test or analysis is clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. While the plaintiff was never offered a blood test by the police, § 14-227b (b) provides that if the operator "refuses or is unable to submit to a blood test, the police officer shall designate the breath or urine test as the test to be taken." The police designated the breath test. The record clearly shows that the plaintiff consented to the test and in fact took it six times. The police never designated the urine test as the test to be taken, although they did attempt to have the plaintiff give a urine specimen when the intoximeter, for whatever reason, failed to work. Even then the plaintiff did not refuse the test, but indicated that he was unable to comply.

Even if intentional refusal of the driver to cooperate is a refusal to take the test within the meaning of the statute, the hearing officer never made a finding

that the plaintiff intentionally failed properly to perform the test. The record does not support the finding even if the hearing officer entirely disregarded the plaintiff's testimony. In the present case, the police officer's *opinion* that the plaintiff did not blow forcefully enough into the machine (assuming he could determine that fact) is only a conclusion without any underlying, stated *factual* basis in the record.

The defendant's position that the license was properly suspended is also based on the premise that the failure of a driver to cooperate fully in taking the breath or urine test amounts to a refusal to submit to the test under § 14-227b (f) (3). The statute as it is presently written requires, as a prerequisite to revocation of the operator's license, that the driver *refused* to submit to the test. The statute does not give the police or the hearing officer the authority to determine that a refusal to take the test within the meaning of the statute occurs when the driver consents to take the test and fails to perform it properly, for whatever reason, intentional or unintentional. It is neither the function of the hearing officer nor the court to rewrite the statute.

In *Burson* v. *Collier*, 226 Ga. 427, 429, 175 S.E.2d 660 (1970), a statute provided that a driver's license could be suspended for six months if the driver " 'refuses the request of a law enforcement officer to submit to a chemical test.' " There, the applicant blew twice into the machine, but the examiner decided that this was not a complete test. The court concluded: "Since the statute does not set out what constitutes a complete test, we do not think it a salutary practice to let the Intoximeter operator have an unfettered right to determine what is or is not a complete test. Where the statute fails to set out what constitutes a 'complete' test, we hold that a showing that the appellee did not complete this test (within the judgment of the opera-

tor) is not evidence of a 'refusal to submit' within the contemplation" of the statute. A similar result was reached in *Department of Public Safety* v. *Orr,* 122 Ga. App. 439, 177 S.E.2d 164 (1970).

Section 4-183 (j) allows the court to reverse the decision of the agency if it finds "that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (2) in excess of the statutory authority of the agency . . . (4) affected by other error of law . . . ." Where there is a claim of a violation of subdivisions (1) through (4) of § 4-183 (j), there is a question of law for the court, and the factual and discretionary determinations of the agency are not controlling. *Connecticut Hospital Assn.* v. *Commission on Hospitals & Health Care,* 200 Conn. 133, 140, 509 A.2d 1050 (1986). The defendant erroneously interpreted the statute by expanding it to include conduct that is not within its express terms. While the parties have cited cases that go both ways on whether a health condition, affecting the breathing of the driver and amounting to claimed or actual inability to complete a breath test, justifies refusal to take the test or excuses insufficient performance of it, it is unnecessary to resolve this appeal on that issue.

The appeal is sustained.